Thank you, Your Honors. I just want to mention that I appeared in front of Judge Bright many, many years ago in Patterson v. Hughes. You were on the panel. In fact, I thought you were a Ninth Circuit judge all the time. What year was that? You look familiar. Nineteen. It's in my brief. I don't remember the year. Nineteen ninety four, something like that. I don't even know. Name isn't didn't come back to me, but I can look it up sometime. Thank you for coming back. Thank you for coming back. It was 1993. This is an ERISA case where the standard of view is abuse of discretion. There's really basically two issues involved. My client was trying to get health care from her pension, and it all depended on whether or not she was disabled from injuries on the job. The defense was claiming that her disability disability is solely from a mental condition. And that was the dispute. The flaws in the decision are that there is no second medical opinion as required by the ERISA regulations. When they when you deny a claim and there's an appeal, there's a question of medical. There's a medical question. So let's let's. I think everybody agrees that there should have been a second medical opinion obtained. The district judge thinks that we thought that the question is, what's the standard of review? In other words, is that structural error? Can we look at the record in this case to determine whether or not the second opinion might have made a difference? Should have made a difference. How do we review that error by the by the plan? Well, I think it's an abuse of discretion right off the bat when you when you this is an important issue, whether or not there's a second opinion. There's a lot of evidence in the record that she was disabled from her orthopedic injuries as a stunt woman over 30 years. Who knows what that second opinion would have said? We don't know. Well, you know, one of the things that comes to me, of course, when you're you're issue about discretion and an award, the weighted pretty heavily in favor of the insurance company. But here you've got a regulation that says there should there's a right to a second opinion. And this was denied. Who has the burden of showing that a second opinion would be helpful? Is that on your client's part? I think it's on the defense showing that. Well, I don't think I don't think there should be a burden of anybody to show anything. It's the second opinion is missing. There's evidence that that that even the plan recognized could support a finding that she's disabled from orthopedic injuries. Even though she's also disabled mentally, she may have some versus you says you can have more than one cause of disability. She can be disabled orthopedically. And there's plenty of evidence that she was and that even people at the plant thought she might be in that second opinion is kind of crucial. I don't know why anybody by the plaintiff should have to show what that second opinion would be. I don't know. First of all, it's up to the defense. It's up to the plan to hire the doctor for the second opinion. I don't know who they would hire. I don't know who they would pick. Certainly, if I were to pick somebody and put in a declaration from him in front of the district court, the judge would say, well, that's a doctor that you bought. And of course, you're only going to show me the good opinion. Let me tell you what I think both Judge Wright and I, at least myself, are trying to get to here. We're trying to say everybody agrees there should have been a second opinion. The regulations require it. The statute says that having a plan that provides for a second opinion is a requirement for a full and fair hearing. Do we reverse automatically when there's not a second opinion? Do we put the burden on the plan to demonstrate that the presence of a second opinion would have made no difference? Do you have some burden? How do we deal with these kinds of cases? I haven't found in any of our cases anything that says that we automatically reverse. We talk about skeptically looking at the plan, at the plan's conclusions, or sometimes deferentially looking at them. So to me, this is sort of an issue of first impression. What do we do when one of these components is missing? It is a case of first impression in this circuit. If you say that it's not necessarily reversible to not have a second opinion, every time a plan gets a favorable first opinion denying benefits, they're not going to go out and get a second opinion. Well, but as you said, in your case, you've got some evidence on your side that it may have been caused by physical injuries rather than mental injuries. Is that the test? Do we have to go farther than that? What if we had a case where the claimant had no evidence whatsoever of physical injuries? Would we require to get a second opinion in that case, too? I would say yes, but I would say that's a closer case. I would say you'd have to reverse, but I mean, that's a closer case. This isn't even there. This is a case where there's even a medical report they ignored. There's Ninth Circuit law that if you ignore medical records and come up with a denial opinion, that's arbitrary and capricious. In and of itself, they ignored Dr. Handler's first application or form that he filled out their form, saying that she's totally disabled from orthopedic injuries, that she received over 30 years as a stunt woman. Does the fact that she received disability payments over a period of time, five years, I think the record shows, and the basis was not the basis of now she wants to convert to make a difference in your view? Well, it's funny about that. She did receive benefits on the basis of her being mentally disabled, but those benefits began from the plan a year before she became mentally disabled. So. And if you look at the medical. Don't worry. I said, don't worry. We've looked at it. OK. Well, I didn't make you. If you look at the doctor that said she's mentally disabled, I think it's a year 20. You don't have to dwell on the point. I don't want it from you. Just your opinion. You think that makes no difference. In other words, for five years she was receiving disability, wasn't she? Yes. And the ground was not the ground that she wanted to convert to. Well, it didn't make any difference what grant she was receiving it for for the five years. They didn't really care. Actually, there's the grounds that they set in the record for the basis for her receiving it was that Social Security found that she's disabled. Then their doctor went through some records. We don't know what he went through. And he just wrote mental illness. And that's all he wrote. So it wasn't a circumstance where she'd applied for a physical disability and received them, but was turned down for it and got a mental one. No, no. Isn't there some question here in this record, even if she's got some evidence of physical disability, about when the onset of physical disability was, whether it was while while working for the covered the covered in. I don't think so. If you say that there's evidence that she has an orthopedic injury, there's a report in the in the in the record from from the workers cop. A.M.E. agreed medical examiner who says that she's got all four orthopedic injuries through stunt work. She's got orthopedic injuries. It's the only evidence is stunt work. The district court focused on the fact, and I think the record would support at least part of it, that the disability was due to her mental illness and not occupation. And the issue here for health benefits is dead number. As I understand it, this is the mental illness was a positive through her employment, at least in part together with the physical disability. And I want to ask you this, that their own doctor, I think, was Dr. Shakeman. Yeah. You remember he he said this in his second consultation. She's disabled under the plan on the base of mental illness. Documents in the file do not address her occupational experience as causative. Are there psychiatric reports addressing in detail this issue? Doesn't that indicate a need for somebody specialized in psychiatric work to have a second opinion? How does that strike you? Well, it struck me as strange that he asked the question as the base. A question was the basis of his opinion that he himself didn't know what the evidence regarding that a factor that we should consider. Yeah. OK. So what just what you know, what is our standard of view? I know it's abuse of discretion, but there has to be something that says, hey, it was an abuse of discretion because of what was in the record. Not at least in part not to have the second opinion, rather just to say you're out, period. We don't need any second opinion. I'm sorry. I didn't I didn't understand that. Well, what's what's the standard to say the the judge was wrong in saying there's no causative evidence and no basis for for the disability. Mental disability or whatever total disability she has being related in this has to be mental related causatively to her work. That's what we're talking about. It has to be work related, right? Well, there is no evidence that she that her mental condition is work related. I never argued that there was. There's evidence that independently of her mental situation, her orthopedic injuries are in and of themselves disabling. And there's if you look at excerpts of record 21, there's a report by Dr. Handler there who was a treating doctor who on their form. And it's never mentioned by Dr. Shackman or anybody else on their form. It says that she's totally disabled from orthopedic injuries that she received during her 30 year career as a stunt woman. Are you maintaining that mental illness was causative or not? No, it's not causative. I mean, it's positive. She's disabled mentally. I can't deny that. But but that's not the only reason she's disabled. I know that's not. But the problem is, is she just the disability here that she got that they gave her disability on was mental illness. The plan. And yes. Yes. And isn't it necessary to have some question on the mental illness so that the next doctor examines her is going to go into that mental illness problem and decide whether the physical and mental illness together are totally disabled. So make her totally disabled from her work. Yes, that's that's one way. If they go back and get an orthopedist alone, he can say whether or not she's totally disabled orthopedically. It doesn't matter if she's disabled mentally or not. Let me try this question a little bit differently and see if I can get it through this. What if she was totally disabled mentally and also had physical disabilities? Is there is there a causation issue here? Do you have to show that her inability to work was caused by her physical injuries or that it would have existed wholly apart? It would have existed wholly apart from her physical injuries. Is she entitled to to disability under the plan? Yes. I think the case that you want to look at maybe is Patterson versus Hughesworth. Justice Ferris was on the panel there where the question was whether this man's headaches are physical or whether they're mental. And the court held that if it's a combination of the two, she gets. Yeah, but we have a little bit different circumstance here. And that's where the questions were focused on it. We know she's mentally disabled during the entire time period. No, no, no. Well, we know she's mentally disabled getting disability. Yes. But she she they dated back her disability, both Social Security and the plan to a year before she had any mental problem. OK. But put that aside for a second. She now wants to convert this to a physical disability. I can't work now because I'm physically disabled. And we know that she's been unable to work because she's mentally disabled. No indication that her mental situation has gotten better. So it's still probably disables her from work. Is that what we might call in toward a superseding or intervening cause that that disqualifies her from the no from disability? No, because if it's caused by this by mental and physical, she's still entitled. If it's caused by physical alone, she's titled. If it's either one of them could cause it independently. She's still covered. So it doesn't matter. Do you want to say it's a little bit hard for you? Thank you. It pleased the court. Jeff Kravitz. I'm going to suggest that Judge fees got it all right on this thing and that the appellant has it all wrong. The standard that we're going to be looking at is abusive discretion with skepticism. Now, let's take a look at some of the proofs that we had. Well, but let's just let's just start off and make sure we're where we what we agree on. We do agree that you're supposed to have gotten a second opinion. Correct. Yes. And we do agree that the statutory framework says that a plan that doesn't provide for a second opinion won't be considered to provide a full and fair hearing. Well, this is in order to have a full and fair hearing. You have to have a plan that provides for a second opinion. You did. You have a plan that provided for it. You just neglected to get it. The second opinion and the judge felt that that was pointless, given the state of the record. OK, why? We know the record as well as Judge fees did. Do we give any deference to his conclusion or do we make it independently on our own? It's not like he heard witnesses and judged credibility. He looked at the record and said, I don't think this would make a difference. Put aside the legal standard by which we review the record. Aren't we as well situated as he was to review this? I don't doubt the fact that you folks said his sovereigns on this thing. I'm simply saying that he had written a 30 page opinion that is well reasoned and I think is persuasive for this court. OK, so it's not that we defer to his opinion in this case. We we we refer to it. You refer to it. And might I suggest you refer to a colleague who took a long, hard look at something and wrote a 30 page opinion as opposed to simply give it away. No problem. Because you were about to tell us why a second opinion would have made no difference. So tell us. I think that I think that the second opinion would have made no difference and that this court should so fine for a couple of reasons that I'd like to go into if I could. How do you know? How do we know? How does it feel if there's anything in the record looking at it skeptically, which both he and I think us have to do that says, well, we can say on a second opinion is worthless. That's what you're telling me. Well, I'm not a doctor. I do know from long experience that mental disability, mental problems and physical problems often go together. There's a suggestion by Dr. Chapin. Is there any psychiatric workup? No, that we can say as judges. And if you tell me we can listen to you, then we can say it wouldn't do any good. Well, let me explain why, if I might. Well, no answer. Yes. Go ahead. I'm sorry. Yes, because I think the answer. Yeah, I'm not ducking the question. I think if I know this manner. Yes. If you look at what was done at the Social Security Administration, there were any number of medical reports and workups done at the Social Security Administration. The woman came to them as a stunt woman claiming disabilities, saying that. And it was determined by the Social Security Administration that she could work. She did not meet the standards of the Social Security Administration. They had access to medical records. They took a look at them. That was their conclusion. She filed a worker's compensation claim, claiming disability. And if you will recall, that one did not go to hearing. It was compromised and released. And as part of that compromise and release, there was an admission that there was, in fact, substantial questions as to whether she had ever been injured. And if she'd ever been injured on the job. Now, may I interject on wasn't there an ALJ on in the Social Security Administration who indicated at one time. I don't remember what period it was. Total disability based on mental and physical problems. If I recall that report that that certainly seems to be a throwaway in terms of their ultimate conclusions. Right. But there's also we've got the wrong way. I don't see it as a throwaway. I wonder if it isn't just a signal there. And by Dr. Shachman, a little more is needed. Except that the Social Security Administration determined that she was 100 percent disabled and could not work by virtue of the mental disability, none of which was job related. But we do know that in the Social Security findings, there was no denial that she had disability. It wasn't so complete that she couldn't work. Now they got this mental factor. And, you know, the Social Security disability there, that's enough. We don't have to figure out precisely how much was contributed by mental, physical, by arms, by legs, by toes. If you can't work at all, you get disability. But there is nothing to suggest in the record that her work as a stunt woman contributed to her mental disability. Her mental disability was caused by abuse as a child, by abuse by her husband, by alcoholism. I mean, it's all a sad case. But that's what that's some of the history. At that time, they weren't looking for relationships between the mental and the physical in determining total disability. So I'm not saying you're wrong. I'm not saying that the judge is wrong. All I'm saying is, was there enough there? So, you know, this case has been in the courts. This woman had a tough life. And one more report, and the insurer denied it. And I can't see why it wouldn't have been helpful. I don't know how it came out. I can't predict it. I suppose my answer to that is we look at the standard of abuse of discretion. There is, in ERISA, a societal value in getting things done. The way the board is situated, it's not a board made up of either labor solely or management labor. It's 50-50. It was weighed carefully by those folks. Well, I don't doubt that if absent this procedure problem, if we were just reviewing the decision on the merits, there would be substantial evidence for the result that the plan reached. But we have here at least two doctor's reports, one from Handler, one from Sardoff, and a Social Security decision, perhaps Melwell reasoned, but at least there, it says that she received physical injuries during her employment as a stuntwoman. Why isn't that enough to make this error in not seeking a second opinion harmful, prejudicial? Sure. If there had been a nexus drawn between the physical injuries and the mental injuries, we would have a different case, but we don't. We've got, as I believe you said, something on the order of a superseding cause. She's 100 percent disabled because of her depression. Well, there's also in tort this notion of concurrent cause. I guess the question is if she's disabled both because of her depression and because of her physical injuries, would she be entitled to disability? Your opponent says yes. If they were both job-related. Okay. And there's nothing to it. And we know the mental was not job-related. The mental is not job-related. But we do have doctors. I'm sorry. Let me just finish here and see if you can respond to it. We do have doctor's reports saying that her physical disability is job-related. They may be wrong, but they say that. I'm trying to figure out, are you saying it doesn't matter because she would have been disabled anyway? Is that your argument? A couple of things. Number one, it doesn't matter because she would have been disabled anyway. Number two, it doesn't matter because her physical disabilities were such that she could return to work, albeit not as a stunt woman, but that's not the standard.  She could do any number of tasks. The real reason this woman cannot work is because she's mentally disabled as a result of abusive situations throughout her life. That mental condition was on top of her physical condition. Her physical conditions were such that she was disabled, but she could do some works in the public, you know, in other jobs. She couldn't go back as a stunt woman. Now you put the mental comes on, and that's enough. And I just, you know, the questions are in my mind, would I feel better if I were the trial judge with another report? I would. Mr. Kravitz. That may be my personality and not a legal opinion. Mr. Kravitz, I know you want to answer everybody's question. I'm worried as I see the time tip down, and there's a critical question that I hope you will answer. Yes, sir. At this point today, for example, let's assume an appellate court would say you made a mistake. Two reports were required. We didn't have two reports. Let's assume that would be the case. You can't send her back today to get what would have been the report that she would have gotten had she gone immediately. So what do you think our results should be? I'm going to take your hypothetical as phrased. All right. Okay, and not concede anything on the predicate. I understand. All right. Yes. I see no – well, the second report would be reviewing the medical record, which is existent. You understand the point. Let's assume that we would say she should have had the second report. Yeah. In my view, and I might as well tell you, it's too late to get the second report now because what you get when you get a second report now is not what you would have gotten if you had gotten a second report when it was timely. That's a possibility. That's certainly a possibility that I need to concede. Although I thought what you were saying a moment ago is that you probably could because you'd send the doctor to review the medical records. You don't need a second examination of the patient. It's just a second opinion. Yeah. The doctor could review the records as they existed at the time the decision was made and offer a consultation. That's all it requires. Right. And might I say she was represented by counsel, and if she had wanted to submit a report to the board indicating this nexus, which is now being brought up for the first time after we got a federal case, she could have done so. She didn't do so. If she hadn't been with counsel, I think that, you know, you could press me pretty hard on that. But having had counsel and having not submitted something, I'm not going to say it's invited error, but it's a little bit peculiar. But I want to understand your legal point because I'm not sure I took this from the briefs. Okay. Your legal point is that because she was disabled completely mentally during all relevant time periods to this case, it doesn't matter that there was an overlay of physical disability. Is that? Yes. Is that a fair statement in your position? Yes. Yes. And what case do you cite for that position? I don't think I've seen any case that's exactly on point, and believe me, we have looked for it. I mean, I did take a look at the Court's opinion on the Ellie case, which dealt with abuse of discretion, but it doesn't handle quite. Yeah, this strikes me as a legal question. The reason I ask is this strikes me as a legal question. In other words, if you're right legally, then the record, I don't think there's much dispute in the record that she was disabled mentally. If you're not right legally, then perhaps it would be useful to have a second opinion because we would then figure out whether or not her physical injuries really were disabled. Except for the fact that you get the countervailing societal view, which is the plan is set up to be able to make those doubtful decisions. They reviewed the record. The doctor reviewed the record. The vast bulk of the medical evidence in this thing says she's not disabled because she was a stunt woman, as those disabilities, you know. She's not 100 percent disabled. She's 100 percent disabled because she's mentally in a bad way. And that being the case, under the rules of the trust, she does not qualify. And it would be an idle act to go back and start the process all over again, rather than deferring to a board which considered everything, to a trial judge who wrote a 30-page opinion and considered everything, and to the doctor who, contrary to what has been said by my opposition, did take a look at all those medical opinions. You know, there are some of us who think the only reason you write a 30-page opinion is because it's so complicated or so confusing, or you are so confused that you can't say it in four or five. I'm familiar with Holmes' quote, which was, I didn't have time to write a short opinion, so I wrote a long one. But having said that ---- But it may not be so impressive to people who review it. I can understand that, surely, but to my mind, a little bit more impressive than it if it had been three lines. There would still be thought going on. Well, no, I guess it just means the district judge found this case as difficult as we do. With that, I'll submit unless there are further questions from the Court. What do you think the Court's bottom line, our bottom line, should be on this review? I think that the Court's bottom line should be the same as what Judge Fee's bottom line should be, which was that she is 100 percent disabled by virtue of her mental depression, which is not job-related, that there were prior situations where there was a finding of some disability but not 100 percent disability, and that, therefore, it was not an abuse of discretion for either the Board or for the trial judge to find that she's not entitled to that second pension. Let me throw out one other comment to you and respond to it if you'd like to. You know, this is a matter of living, and all of us are mature here. Isn't it kind of a truism that people having physical disabilities which affect their life and their work also go along with having depression and other types of mental illness or near mental illness? Your Honor, I might have answered that differently at 23 than I will answer it now at 63. I will certainly concede that the mind-body dichotomy is not a dichotomy that one plays into the other, but she was seen by any number of doctors who had an opportunity to fully explore that. And they did, and they came to the conclusion that the depression was caused by her horrible experiences and not by working as a stuntwoman. But they weren't considering whether occupational was a factor, and that's why that question by Dr. Shachman shakes me up a little bit. I understand, but I think the ultimate conclusion was right. It should be the same conclusion here. Thank you. Thank you, sir. Mr. Fleischman, if you could, I really would like to hear you respond to the contention made by Mr. Kravitz that as long as she was completely mentally disabled, in other words, unable to return to work because of her mental disability, and we all – I think that seems to be a given in this case. It really doesn't matter if she also had a physical problem. I may be rephrasing his argument incorrectly, but you understand what he was arguing. Could you respond to that and tell me what case law supports you? Patterson v. Hughes. What was that? Patterson v. Hughes, it's cited in my brief. That issue was brought up before the committee, whoever decides whether she gets benefits or not, in the e-mails back and forth between the lawyers. I think the question is, is it a specific – does the orthopedic injuries have to come from a specific incident or can be a cumulative type of thing? Does it have to be the only cause? And all those – Let me ask the question slightly differently. If she had no orthopedic injuries, she would still be completely disabled, correct? Right. We agree? Yes. Does that make a difference? No. No. You know, if you go to a psychiatrist, he's going to – and you say, what's wrong with him, doctor? He's probably going to say something wrong with your head. If you go to an orthopedist, it's probably something with your back. They focus in on different parts of the body. If you go to a proctologist, who knows what they'll say. But all the psychiatrists said, yes, she needs mental health, all right? But the orthopedist, like Dr. Handler said, she's orthopedically 100 percent disabled from her work. So it's not an open and shut thing. And if either one of them could cause disability, Patterson says she gets the benefit. If they both combine to bring about the disability, Patterson says she gets the benefit. So it doesn't make any difference. As for the standard of review, I sent the court the – We got in. I think your time has expired. I want to be fair to both sides in terms of time. So thank you. Can I just make one point? There was a – I never represented her until after the complaint was filed. She could file the complaint and probe her. So I wasn't there during the administrative. She wasn't represented. We never blame the appellate counsel for what happened below. With the application submitted, I thank both sides for their arguments and their briefs.
judges: Bright, Farris, Hurwitz